IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| ISRAEL USBALDO LUCAS JUAREZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:26-cv-563 (LMB/IDD) |
| | ) | |
| PAUL PERRY, et al., | ) | |
| | ) | |
| Respondents. | ) | |

MEMORANDUM OPINION

Before the Court is petitioner Israel Usbaldo Lucas Juarez's ("Lucas Juarez") Motion to Enforce Judgment ("Motion"), in which he seeks enforcement of the Court's March 5, 2026, Order requiring the federal respondents to provide him with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Although Lucas Juarez received a bond hearing on March 17, 2026, in response to the Court's March 5, 2026, Order, he contends that the Immigration Judge's decision to deny his request for release on bond violated due process. The federal respondents have filed an opposition, and Lucas Juarez has filed a reply. For the reasons stated below, Lucas Juarez's Motion will be granted, and the federal respondents will be ordered to provide him with a new, constitutionally compliant § 1226(a) bond hearing before a different Immigration Judge.

I.

Section 1226(a) governs the detention of certain noncitizens "already present in the United States" pending the outcome of removal proceedings. Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Although § 1226(a) permits the Attorney General to detain noncitizens during removal proceedings, "the [Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention" either on

a monetary bond or on conditional parole.[1] Miranda v. Garland, 34 F.4th 338, 346 (4th Cir. 2022). The first opportunity is with an immigration officer, who is authorized to release a noncitizen on bond or conditional parole if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "If an immigration officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable, an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release." Miranda, 34 F.4th at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). The "third opportunity comes if an alien is not satisfied with the immigration judge's decision," at which time the noncitizen "may appeal to the Board of Immigration Appeals ["BIA"] for another review." Id. at 346–47 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)). "At each step in this process, the government requires the [noncitizen] to prove that he or she is not a danger to the community or a flight risk." Id. at 347 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)).

In conducting a § 1226(a) bond hearing, an Immigration Judge "may look to a number of factors," including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

---

[1] As the Fourth Circuit has stated, the Court occasionally uses the term "alien" because Congress has used the term in the text of the applicable statutes and regulations. The Court's "use of the term 'alien' is not intended to express any opinion, pejorative or otherwise, about the [petitioner] in this action or others challenging their detention under our immigration laws." Miranda v. Garland, 34 F.4th 338, 345 n.1 (4th Cir. 2022).

prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." Miranda, 34 F.4th at 362. And of course, the procedures used by federal immigration officials to deny a noncitizen's request for release on bond must always comply with fundamental principles of due process. See id. at 359 (applying the Mathews v. Eldridge "balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a)").

II.

The following facts are derived from the pleadings, the exhibits, and the audio recording of the March 5, 2026, bond hearing, which the federal respondents have provided to the Court. Lucas Juarez is a native and citizen of Guatemala. [Dkt. No. 1] at ¶ 52. He has resided in the United States since 2011, and on February 22, 2026, he was arrested by ICE. Id. ¶¶ 52, 54-55. On February 25, 2026, Lucas Juarez filed a Petition for Writ of Habeas Corpus ("Petition"), arguing that he was entitled to a § 1226(a) bond hearing. [Dkt. No. 1]. In response, the federal respondents filed a pleading indicating that Lucas Juarez's Petition did "not differ in any material fashion" from the factual and legal issues presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818-LMB-WEF (E.D. Va.), in which the Court determined that an individual who had been present in the United States for several years was not detained under 8 U.S.C. § 1225(b)(2) but rather detained under § 1226(a), thus entitling him to a bond hearing. [Dkt. No. 5]. On March 5, 2026, the Court entered an Order finding that Lucas Juarez's detention was governed by § 1226(a) and directing the federal respondents to provide him with a standard bond hearing. [Dkt. No. 6]. The Court also ordered Lucas Juarez's prompt release from custody pending that bond hearing. Id.

On March 17, 2026, at 1:00 PM, Lucas Juarez appeared with counsel via Webex for his scheduled bond hearing before Immigration Judge David Gardey in the Annandale Immigration Court. [Dkt. No. 9] at 3. Lucas Juarez argued that he should be released on bond because he presents neither a flight risk nor a danger to the community, citing his fixed Virginia address, length of residency in the United States, steady employment history as a talented welder, ties to the community, including his ten-year-old U.S. citizen son, and eligibility for immigration relief.[2] Lucas Juarez provided the Immigration Judge with his 2013-2024 tax returns; letters of support from individuals who know him in professional and personal capacities; and proof of home ownership. Petitioner also acknowledged a pending DUI charge from February 2026, but argued that his prior arrest does not subject him to mandatory detention, and that he is innocent until proven guilty. The Department of Homeland Security ("DHS") attorney argued that Lucas Juarez should be detained pending the removal proceedings because Lucas Juarez entered the United States without inspection and has been working in the country unlawfully. The DHS attorney also noted that his pending DUI conviction is a significant danger indicator; and that his tax returns and two fixed addresses create cause for suspicion. Lucas Juarez's counsel responded, and the Immigration Judge issued an oral ruling:

> Under the circumstances, I'm going to deny the request for bond. I don't find that you've established that he is not a risk of flight or not a danger to the community. As to danger to the community, there is his recent arrest for driving while intoxicated and there's no statement from him or others explaining his alcohol use or even denying or explaining the circumstances. There's no sponsor that would ensure his compliance with the law. As to risk of flight, there's a significant issue concerning his fixed address. Many of the documents indicate an address of ▮ Homecrest. Many documents list ▮ Hilton Ave. There's a claim that he owns some property; it's not clear which properties or he owns both properties. There's

---

[2] The morning of the hearing, counsel for petitioner filed a Form EOIR-42B, Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents, accompanied by evidence that Lucas Juarez has a qualifying relative (his son), has been present in the United States for over ten years, and is a person of good moral character. [Dkt. No. 9] at 3.

a statement by a landlord dated February 27, 2026, indicating that respondent has been living at ▮ Homecrest since August 2020, with a monthly rent of $800, which is at odds with his claim that he owns ▮ Homecrest. He's apparently using that address for some purposes, including taxes, car titles, and his contractor address. But then he was using ▮ Hilton Avenue for multiple other purposes including car titles, car insurance, and bank accounts. So, it's the Court's concern that we have multiple addresses and we have a signed recent letter indicating – contradicting the claim of his residence at the [Hilton Avenue] address. The Court is also concerned that the respondent does not appear to have any likely avenue of relief. He has filed a 42B application and he has a US citizen son who is ten-years-old, but there's no proffer or any indication that there's any exceptional or extremely unusual hardship relating to his son and this would indicate that he is— under the Guerra factors that he has a US citizen son but there is no likelihood or even possibility that he would be able to secure a residence in the United States based on that 42B application. The fact that there's no sponsor also concerns the Court concerning risk of flight and the fact that he has been present illegally. He entered the United States illegally in 2011 and has maintained that unlawful status for some 15 years, and has been working unlawfully in violation of the employment and immigration laws of the United States. He appears to have been filing and paying his taxes and reporting significant income in 2023 and 2024, so those are positive equities on his behalf, but given the numerous questions about his residency and his violations of the immigration laws and other laws for a significant period of time, the Court is going to find that there is no condition or combination of conditions that would ensure his appearance.[3]

The Immigration Judge required Lucas Juarez to self-surrender to DHS by March 23, 2026 at 5:00 PM. Additionally, it is unclear from the record before the Court whether Lucas Juarez has appealed the Immigration Judge's detention decision to the BIA; however, on March 19, 2026, Lucas Juarez filed the pending Motion, which seeks enforcement of this Court's March 5, 2026, Order and contends that the bond hearing he received did not comply with procedural due process requirements. [Dkt. No. 8]. The Court's March 20, 2026, Order vacated the Immigration Judge's direction to petitioner that he report to ICE for re-detention, and enjoined the federal respondents from re-detaining him pending adjudication of this Motion unless he:

---

[3] This quote is taken from the audio recording of the March 17, 2026, bond hearing. Because neither party has provided a written transcript, the quote reflects the Court's understanding of the Immigration Judge's ruling.

committed a violation of any federal, state, or local law; failed to comply with the conditions of his release; failed to attend a properly noticed immigration hearing; or was detained pursuant to a valid final order of removal.[4] [Dkt. No. 11].

### III.

Before reaching the merits of Lucas Juarez's Motion, the Court begins, as it must, with considering whether it has jurisdiction to determine whether the federal respondents provided Lucas Juarez with a constitutionally compliant § 1226(a) bond hearing. The federal respondents contend that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) strip the Court of jurisdiction to review an Immigration Judge's decision to deny bond. The federal respondents also assert that Lucas Juarez failed to exhaust his administrative remedies because he did not appeal the adverse bond decision to the BIA before seeking relief from this Court. For the reasons explained below, these arguments are rejected.

### A. Section 1226(e)

The federal respondents first argue that 8 U.S.C. § 1226(e) precludes the Court from exercising jurisdiction over Lucas Juarez's Motion. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be

---

[4] On April 9, 2026, Lucas Juarez filed a Notice Regarding Violation of Court Order ("Notice"), alleging that the federal respondents violated this Court's March 20, 2026, Order. [Dkt. No. 15]. Specifically, petitioner alleged that on April 9, 2026, at 12:00 pm., petitioner attended a scheduled appointment in Norfolk, Virginia, and was detained by Immigration and Customs Enforcement ("ICE") officials at that appointment despite this Court's Order enjoining the federal respondents from re-detaining petitioner pending adjudication of his Motion to Enforce Judgment. See id. at 1-2. After petitioner's counsel contacted the U.S. Attorney's Office, "ICE released [p]etitioner at approximately 1:50 [pm] but did not provide ... an acceptable explanation as to the reason for his re-detention." Id. at 2. Although Lucas Juarez asserted that he would be filing a "Motion for Order to Show Cause as to why [the federal respondents] should not be held in contempt of court" for their actions, the Court's April 10, 2026, Order ordered the petitioner not to file the motion, finding that the U.S. Attorney's Office acted diligently to ensure that the Court's March 20, 2026, Order was enforced. [Dkt. No. 16].

subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." According to the federal respondents, because Lucas Juarez's Motion challenges the Immigration Judge's discretionary bond decision, § 1226(e) strips the Court of jurisdiction. [Dkt. No. 13] at 2–6.

It is undisputed that "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." Jennings, 583 U.S. at 295 (cleaned up). In this sense, Judge Ellis's opinion in Hatami v. Chertoff, 467 F. Supp. 2d 637 (E.D. Va. 2006), which is cited heavily by the federal respondents, is instructive. Hatami involved a noncitizen from Afghanistan who had been convicted in Virginia of domestic assault and battery. Id. at 638–39. After the BIA denied Hatami's request for cancellation of removal, Hatami submitted three consecutive bond applications which were denied because "DHS ha[d] made a prima facie showing of dangerousness" based on "a facially legitimate concern with [Hatami's] behavior." Id. at 639. Hatami challenged the Immigration Judge's bond decision in federal court, claiming that the Immigration Judge "failed to provide a 'meaningful' bond hearing . . . because he relied on the government's 'bare bones allegations' of dangerousness." Id. The district court dismissed his habeas action, finding that § 1226(e) precluded judicial review because Hatami "challenge[d] only the decision to deny bond under the statute." Id. at 641–42 (emphasis added). By using the qualifier "only," it is clear that Judge Ellis did not close off other grounds upon which a noncitizen could seek relief from an Immigration Judge's denial of bond.

Indeed, as recognized by both the Supreme Court and the Fourth Circuit, § 1226(e) does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received. In Jennings, the Supreme Court made clear that

7

§ 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." 583 U.S. at 295 (cleaned up).  There, several noncitizens mounted Fifth Amendment challenges to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), contending that they were entitled to periodic bond hearings during the course of their detention.  Id. at 286, 312.  The Court held that because the noncitizens "contest[ed] the constitutionality of the entire statutory scheme," and because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,'" it was able to "consider the merits of their claims."  Id. at 296.

Following Jennings, the Fourth Circuit held in Miranda that § 1226(e) did not prohibit the exercise of jurisdiction where noncitizens challenged "the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a)."  34 F.4th at 352.  Specifically, the court stated that a "constitutional challenge" to the Attorney General's "categorical, across-the-board" procedures "is beyond the scope of § 1226(e)."  Id.  Taking Jennings and Miranda together, courts in this district have concluded that § 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in denying his request for release on bond failed to comport with due process.[5]  See Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 3 (E.D. Va. Feb. 18, 2026).

---

[5] Courts in other jurisdictions have reached similar conclusions.  See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law"); Trejo v. Bullock, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026) ("[T]his Court's jurisdiction to review Petitioner's bond hearing is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with this Court's Order."); Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (finding that § 1226(e) does not strip the court of jurisdiction where a noncitizen "argues that the IJ failed to comport with due process requirements when she denied him release on bond"); Garcia v. Hyde, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) ("[C]ourts can review the IJ's decision to ensure that it comported with procedural due process requirements.").

Here, Lucas Juarez "is not challenging the conclusion of the Immigration Judge (a discretionary determination) but is rather arguing that the Immigration Judge did not adhere to principles of due process when arriving at that conclusion." [Dkt. No. 9] at 9.  His challenge is therefore "constitutional in nature." Id. Specifically, Lucas Juarez contends that the facts the Immigration Judge relied upon to deny him bond—including his unlawful status, his working without authorization, and his unclear fixed residence—were so lacking in probative value that the consideration of those facts deprived him of a fair and individualized bond hearing.  Id. 3–4. Because "this is precisely the type of claim that belongs in federal court," Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (cleaned up), § 1226(e) does not strip the Court of jurisdiction to consider Lucas Juarez's Motion.

B.  Section 1252(a)(2)(B)(ii)

The federal respondents' second jurisdictional argument is based on 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits federal courts from reviewing any "decision or action" of "the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [her] discretion."  According to the federal respondents, because the decision whether to release a noncitizen on bond or conditional parole pending the outcome of removal proceedings is committed to agency discretion, § 1252(a)(2)(B)(ii) forecloses jurisdiction. [Dkt. No. 13] at 6-9.  This argument is unpersuasive for one simple reason: Lucas Juarez's claim is limited to whether the Immigration Judge's decision comports with due process, and federal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond.  Accordingly, § 1252(a)(2)(B)(ii) does not bar the exercise of jurisdiction.  Accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 4 (E.D. Va. Feb. 18, 2026); see also Miranda, 34 F.4th at 353 n.6 (holding that § 1252(a)(2)(B)(ii) does not bar jurisdiction where the

noncitizens "challenge[d] the extent of the government's authority under § 1226(a) rather than a discretionary decision").

C. Exhaustion

Finally, to the extent that the federal respondents argue that Lucas Juarez failed to exhaust his administrative remedies by not presenting his "disagreement" with the Immigration Judge's adverse bond decision to the BIA, that argument also fails. [Dkt. No. 13] at 5. In Miranda, the Fourth Circuit considered whether a noncitizen asserting a Fifth Amendment challenge to the procedures used during a § 1226(a) bond hearing must appeal to the BIA before seeking relief in federal court. 34 F.4th at 351. The Fourth Circuit concluded that because "no statute applicable to [the claims at issue] provides that administrative exhaustion is jurisdictional," the "district court had discretion to decide if administrative exhaustion is required." Id.; see McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."). Here, the federal respondents have not advanced any compelling argument for the proposition that Lucas Juarez should be required to appeal to the BIA before seeking relief in this Court, and the Court will not require Lucas Juarez to "sit in an ICE detention facility" for months on end while he awaits a BIA decision. Picado, 2026 WL 352691, at *6. Accordingly, "the [C]ourt will exercise its discretion to excuse administrative exhaustion" in this habeas action. Dubon Miranda v. Barr, 463 F. Supp. 3d 632, 643 (D. Md. 2020), aff'd sub nom. Miranda, 34 F.4th 338; accord Diahn v. Lowe, 2026 WL 84576, at *5 (M.D. Pa. Jan. 12, 2026).

IV.

Turning to the merits of Lucas Juarez's Motion, the Court finds that most of the facts the Immigration Judge relied upon in denying Lucas Juarez's request for release on bond violated due process.

## A. <u>Flight Risk</u>

In support of his determination that Lucas Juarez presents a flight risk, the Immigration relied upon three facts, none of which passes constitutional muster. First, the Immigration Judge pointed to Lucas Juarez's unlawful status. He stated that the fact that Lucas Juarez "entered the United States illegally in 2011 and has maintained that unlawful status for some 15 years," gave him concern regarding risk of flight. The Immigration Judge also speculated as to Lucas Juarez's likelihood of success on his pending Form EOIR 42B application, stating that "there's no proffer or any indication that there's any exceptional or extremely unusual hardship relating to his son . . . [and] no likelihood or even possibility that he would be able to secure a residence in the United States based on that 42B application." As an initial matter, the "Immigration Judge's speculation as to the merits of that application . . . supports no inference of flight risk." <u>Aguilon Fuentez v. Bondi, et al.</u>, 1:26-cv-167-AJT-WEF, Dkt. No. 14, at 5 (E.D. Va. Feb. 24, 2026). Moreover, a noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond under § 1226(a) given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status. To consider this fact violates both § 1226(a)'s requirement of an individualized hearing and fundamental due process principles. As another jurist in this district aptly stated, "an individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." <u>Argueta-Portillo v. Bondi, et al.</u>, 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026).

BIA precedents confirm this conclusion. In <u>Matter of Patel</u>, the BIA considered whether an Immigration Judge erred in releasing a noncitizen on a bond of $500 rather than releasing him on his own recognizance. 15 I. & N. Dec. 666, 666–67 (BIA 1976). In setting a bond of $500, the Immigration Judge relied upon the noncitizen having "overstayed his student visa" and the

11

fact that "the visa petition of which he is the beneficiary was denied because he lacked a labor certification." Id. at 667. But the BIA found that "[t]hese factors bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding." Id. According to the BIA, "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." Id. Therefore, the BIA released the noncitizen on his own recognizance. Id. The BIA has continued to cite Matter of Patel for the proposition that "factors unique to each alien must be evaluated in determining suitability for release on custody." In re Helia de la Cruz-Palencia, 2011 WL 2261251, at *1 (BIA May 13, 2011) (unpublished).

Second, the Immigration Judge emphasized that Lucas Juarez has been working in the United States without authorization. This is problematic for two reasons. To begin, similar to the previous discussion concerning the consideration of a noncitizen's unlawful status, Lucas Juarez's "unauthorized employment is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place." Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026). If an Immigration Judge could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status—"discretionary detention under § 1226(a) . . . would become a de facto mandatory § 1225 detention." Id. Moreover, no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not. Id. Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed.[6] And the consistent record of Lucas Juarez's filing apparently accurate

---

[6] In the criminal context, a steady employment history typically entitles a defendant to release pending trial. See, e.g., United States v. Adams, 794 F. Supp. 2d 989, 993 (S.D. Iowa 2011) (finding that "the Government has not shown by a preponderance of the evidence that Defendant will not appear as required if released pending trial" because "[f]or the two years leading up to

12

income tax returns, a fact that the Immigration Judge even cited as a positive factor in petitioner's favor, undercuts his determination that petitioner's long record of unauthorized employment was a flight risk factor. In short, the link between Lucas Juarez's unauthorized employment and any risk of flight is so tenuous that the Immigration Judge's reliance on that fact deprived Lucas Juarez of constitutionally sufficient process.

Third, the Immigration Judge pointed to potential inconsistencies in Lucas Juarez's fixed address records. According to the Immigration Judge, the documents presented regarding petitioner's fixed address indicate two different addresses: █ Homecrest Boulevard and █ Hilton Avenue, and although "[t]here's a claim that [petitioner] owns some property[,] it's not clear which properties or he owns both properties." See generally, [Dkt. No. 8-2]. Furthermore, the Immigration Judge emphasized a notarized February 27, 2026, letter from a property manager stating that Lucas Juarez had been living and paying rent at the Homecrest Boulevard address, which contradicted petitioner's claim of his residence at the Hilton Avenue address. In response to the Immigration Judge's concerns, petitioner's counsel acknowledged the cause for confusion and explained that Lucas Juarez had lived at the Homecrest Boulevard address for some time as a renter, and that he had recently purchased the Hilton Avenue residence and moved there. Counsel further explained that Lucas Juarez's sister-in-law now lives at the Homecrest address and pays rent, and that it was possible that the landlord did not know who was living there.[7] Without explaining his reasoning, the Immigration Judge rejected that

---

her arrest she had maintained steady employment . . . and apparently will be able to return to this job if released pending trial").

[7] Attached to Lucas Juarez's Motion is a notarized March 19, 2026, letter from the property manager at the Homecrest Boulevard address, which clarified that petitioner has "been [a] valued Homecrest MHC owner of manufactured home [sic] . . . since August 2020" and that "[c]urrently, his home is rented to Santos Enrique █ while . . . Lucas Juarez resides at █ Hilton Avenue Chesapeake, VA 23324." [Dkt. No. 8-2] at 1. It is unclear from the record

argument. Setting aside the letter at issue, the record before the Immigration Judge included conclusive evidence that Lucas Juarez has a fixed address and owns property in Chesapeake Virginia. As petitioner's counsel emphasized during the March 17, 2026, hearing, such evidence included Lucas Juarez's mortgage on the Hilton Avenue residence. [Dkt. No. 8-2] at 11. The purported discrepancy of a fixed address, standing alone, does not provide the evidentiary support constitutionally required to deny a noncitizen's request for release on bond, particularly given that the Immigration Judge did not consider any condition or set of conditions that would reasonably ensure Lucas Juarez's appearance at future proceedings. In sum, the Immigration Judge's conclusion that the petitioner posed such a serious flight risk that no condition of release could adequately ensure his appearance violated petitioner's right to an individualized bond hearing.

## B. Danger to the Community

In support of his determination that Lucas Juarez presents a danger to the community, the Immigration Judge focused on petitioner's "recent arrest for driving while intoxicated" and the fact that "there's no statement from him or others explaining his alcohol use or even denying or explaining the circumstances." As a preliminary matter, the Immigration Judge failed to place sufficient weight on the fact that Lucas Juarez had not been convicted at the time of the § 1226(a) bond hearing. "Indeed, under bedrock U.S. law, a person is presumed innocent until proven guilty beyond a reasonable doubt." Alvarado Lopez v. Dillman, No. 1:25-CV-2456 (LMB/LRV), 2026 WL 688958, at *7 (E.D. Va. Mar. 11, 2026) (citing In re Winship, 397 U.S. 358, 361 (1970) ("The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation.")).

---

whether this letter was also sent to the Immigration Judge. Lucas Juarez also clarified that he owns the trailer on Homecrest Boulevard, but rents the land that it sits on. [Dkt. No. 9] at 4-5.

14

Moreover, although drunk driving can pose a serious risk of danger to society, the Immigration Judge failed to consider a critical fact in evaluating whether Lucas Juarez himself posed such a danger: that petitioner's February 2026 DUI charge was his "first and only alcohol-related incident (or criminal arrest) over his fifteen-plus years in the United States[,]" and the state court did not find any risk of flight or risk to the community because it released petitioner on bond since his arrest. [Dkt. No. 9] at 6. As this Court has previously found, a state court's bond decision and the pending nature of a DUI charge are critical to determining not only whether a person poses a danger to society but also whether there is any bond condition or set of bond conditions that would reasonably ensure the safety of the community, such as a restriction on the person's driving privileges. Alvarado Lopez v. Dillman, 2026 WL 688958, at *7. In fact, petitioner's counsel stated on the record during the March 17, 2026, bond hearing that Lucas Juarez was "amenable to accepting a bond condition prohibiting him from consuming alcohol while on release on bond, a condition that another Immigration Judge at the Annandale Immigration Court placed on [another petitioner] with an open DUI." [Dkt. No. 9] at 6. The Immigration Judge did not explain why he found each condition insufficient to mitigate any perceived danger to the community. In sum, the Immigration Judge's cursory consideration of the February 2026 charge demonstrates that Lucas Juarez did not receive a constitutionally adequate bond hearing.

## V.

For all the reasons stated above, Lucas Juarez's Motion, [Dkt. No. 8], will be granted by an Order to be issued with this Memorandum Opinion, which will require the federal respondents to provide Lucas Juarez with a new, constitutionally compliant bond hearing pursuant to § 1226(a) before a different Immigration Judge, and not before June 5, 2026, to allow the state court proceedings to go forward without interruption.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel for

petitioner, Israel Usbaldo Lucas Juarez, and to counsel for the federal respondents.

Entered this 20 day of May, 2026.

Alexandria, Virginia

_____ /s/ _____
Leonie M. Brinkema
United States District Judge

16